UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6162-CR-ROETTGER(S)/SNOW

UNITED STATES OF AMERICA,

       Plaintiff,

v.

RAYMOND HICKS, et al,

       Defendant.

_____/

## MOTION FOR DE NOVO REVIEW OF MAGISTRATES DETENTION ORDER AND FOR RELEASE ON REASONABLE BOND

The Defendant, RAYMOND HICKS, through counsel and pursuant to 18 U.S.C. §3145 respectfully moves this Honorable Court to revoke the Order of Detention, dated June 23, 2000, entered by United States Magistrate Judge Lurana S. Snow, and for release of Defendant, HICKS, on reasonable bond.

In support thereof, counsel states as follows:

1. Magistrate Judge Snow's Detention Order was predicated on a finding that there was probable cause to believe that the defendants had conspired to possess with intent to distribute a very substantial amount of cocaine, an offense punishable by more than ten years under the Controlled Substance Act, 21 U.S.C. §801, et seq. Magistrate Judge Snow found that HICKS constituted a danger to the community, 18 U.S.C. §3142(G)(4). The Defendant was pre-trial detained and has now been incarcerated at the Federal Detention Center in Miami for almost ten (10) months. The Magistrate found that there were no conditions or combination of conditions that would reasonably assure the Defendant's presence at trial.

2. During the detention hearing HICKS was portrayed as a "Narcotics Courier", someone who transported cocaine to North Florida and to other States such as North Carolina. Until his arrest in the above captioned case the Defendant, RAYMOND HICKS, was a Broward Sheriffs Detention Officer and at the detention hearing he was described as using his position with the Broward Sheriff's Office (BSO) to assist the so called Smith Organization in its alleged drug trafficking. Defendant HICKS is charged only in Count One of the Indictment, that is, the conspiracy Count.

3. As the discovery process develops the Government's position now appears to have changed, in that now HICKS is not a "Drug Courier." The Government does persist in its allegation that HICKS used his Detention Deputy position to help the so called Smith Organization. Generally the way in which HICKS is alleged to have helped the Smith organization is described as "having used his position as a law enforcement officer to pass along confidential information, including the names of informants." and that "HICKS carried his police badge with him while working as a courier for the Smith organization to prevent inquiries from other police officer." This last allegation, proffered during the detention hearing, now appears to be wrong and that HICKS was not a courier. HICKS earlier motion for further particulars was denied. For that reason he in unable to more specifically address the Government's allegations.

4. On February 19, 2001 HICKS filed a Motion For Immediate Review Of Detention Status And Automatic Release, Pursuant To 28 U.S.C., §3164. That Motion was denied by Magistrate Judge Lurana S.

Snow on April 9, 2001 "without prejudice if the case does not proceed to trial as scheduled in August, 2001."

5. During the pre-trial hearing Magistrate Judge Snow found that HICKS was not a risk of flight but that he was a danger to the community. Based on the Government's proffer during the hearing the Magistrate found that the Smith Organization was responsible for the distribution of more than 350 kilograms of cocaine in Georgia and North Carolina. Specifically, Magistrate Snow found that HICKS was one of those persons that transported Cocaine. Those findings are now questionable in light of the recent pleas by two of HICKS co-defendants and the Affidavits attached to this Motion.

6. It is important to note that co-defendants, SAM JONES and EARL PARKER have recently pled guilty. During the detention hearing the Magistrate found that PARKER was directly connected to at least fifty kilograms of cocaine, and that for two months he managed the Smith warehouse, such a finding was based on the Government's proffer; However, in Paragraph 7. a. of the recent Plea Agreement between Mr. Parker and the Government the prosecution limits the amount of cocaine attributable to Mr. Parker to ..."at least 500 grams but less than 2 kilograms." - a far cry from the 50 kilograms and managerial role proffered to Magistrate Snow at the detention hearing. Magistrate Snow also found that, according to the Government's proffer, Sam Jones was in charge of the distribution network in Georgia and Florida, and served as Barry Smith's enforcer and that a seizure of $63,000 was linked to JONES.
Mr. Jones also has recently pled guilty and Paragraph 8. a. of the Plea Agreement between Mr. Jones and the Government limits the

amount of cocaine attributable to him to only..."at least 2 kilograms but less than 3.5 kilograms. It appears that the 350 kilograms proffered to the Magistrate has somehow been greatly reduced for PARKER and JONES, these two individuals were described to the Magistrate as manager and enforcer. Conversely HICKS, it now appears, is recognized as not a cocaine courier, albeit he is alleged to be a Broward Sheriff's Detention Officer who provide information to the Smith Organization, but that is as yet unproven and so far the Government has proffered incorrectly that he was a drug courier. HICKS has been in pre-trial detention for 10 months because the Government's proffer to the Magistrate made him appear as a danger to the community and subject to a 10 year sentence based on the 350 kilograms of cocaine proffered by the Government. Suddenly, JONES and PARKER are allowed to plead to significantly less cocaine than the amounts proffered by the Government during the detention hearing. What happened to the 350 kilograms of cocaine, or just the 50 kilograms previously attributed to PARKER?

7. Count One of the Second Superseding Indictment alleges that HICKS and seven co-defendant's conspired to possess with intent to distribute in excess of five kilograms of cocaine, this is the only Count in which HICKS is charged. JONES and PARKER, both described by the Government, respectively, as enforcer and manager are allowed to plead to less than the 5 kilograms alleged in Count 1 of the Superseding Indictment; PARKER, the warehouse "manager", was allowed to plea to "at least 500 grams and less than 2 kilograms." JONES, the enforcer, was allowed to plea to "at least two kilograms but less than 3.5 kilograms."

8. The instant case involves 31,000 documents, 138 videos and the Government proffered at the Detention hearing that there were 10,000 audio tapes. Counsel for HICKS has read the six transcripts provided in discovery in which HICKS is identified by the Government as one of the speakers. In one HICKS states that Barry Smith has helped him out while he was unemployed; in another HICKS and BARRY SMITH talk about a truck belonging to SMITH being held at one of the Plazas on the Florida Turnpike and HICKS tell SMITH that Smith, as the owner has to go get the truck and pay the $54.00 impound fee. Barry Smith does mention that HICKS is "in uniform" and HICKS does say that if they do not want to give him the truck he would go with him, but HICKS tells SMITH that the man had said that the owner had to be the one to get the truck and HICKS did not accompany SMITH when SMITH goes to get the truck. By the way, it seems that the truck was stopped because of a tip that it carried drug but no drugs were found, the truck was impounded because the driver did not have drivers license. In another tapes HICKS talks about not having money and about trying to collect on a settlement in a pending law suit; part of that conversation is about injuries sustained by HICKS when a BSO elevator dropped two floors while he was in it. And, a conversation about finding transportation to go to Atlanta for a wedding mentions renting a car or paying Barry Smith to rent his Navigator automobile. Without extremely bias interpretation by the Government none of the six transcript are indicative of any drug dealing or improper conduct by HICKS. HICKS does admit to working out at SMITH's warehouse/Gym and to purchasing a 1993 Mercedes automobile from Barry Smith, which he

legitimately financed.

9. Since his detention HICKS has been able to secure the Affidavits of several of his co-defendant who want to testify in his behalf, and con-current with this Motion is filing a motion for trial severance, attached are the affidavits of the following co-defendants:

A. BERNARD SMITH  says in his Affidavit that he has never paid HICKS for "police type favors, or confidential police-type information."... that HICKS "lawfully purchased a Mercedes Benz automobile from my brother Barry Smith."...that he is not guilty of distributing cocaine and that Hicks never transported cocaine for him and that he, Bernard Smith, does not believe that HICKS was ever involved in any illegal activity including drug activity...that he never heard HICKS say he would "badge his way out of trouble if ever stopped by the police." See copy of BERNARD SMITH Affidavit attached as Exhibit No. 1.

B. ELLIOT AIKEN says he never conspired with HICKS to possess cocaine with intent to distribute, that HICKS is a respected member of the community... does not know HICKS to badge himself out of trouble...that HICKS is innocent of the charges...a 100% innocent man. See copy of Affidavit hereby attached as Exhibit No. 2.

C. ASIA NELSON says that he never conspired with HICKS to possess cocaine with intent to distribute... that HICKS is one of the most respected members of the community... NELSON speaks to HICKS personal involvement in the community and calls HICKS an innocent man. See copy of Affidavit hereby attached as Exhibit No. 3.

D. EARL PARKER says that he never conspired with HICKS to possess cocaine with intent to distribute... that HiCKS is one of the most respected members of the community...that HICKS has helped the elderly and kids. See copy of Affidavit hereby attached as Exhibit No. 4

E. SAM JONES says that he never conspired with HICKS to possess cocaine with intent to distribute...that HICKS is a respected member of the community...concerned with helping the young and elderly...that he cannot imagine HICKS being involved in any illegal activity. See copy of Affidavit hereby attached as Exhibit No. 5.

10. EARL PARKER and SAM JONES have pled guilty and their Plea Agreements show that they are cooperating with the Government, yet both say that HICKS is not involved as alleged by the Government. See copies of PARKER's and JONES's Plea Agreement' hereby attached as Exhibits No. 6 and 7.

11. The Defendant, HICKS, respectfully argues that the Magistrate's presumption that HICKS is a danger to the community is based on (1) the Government's proffer about the amount of cocaine alleged but the Government has allowed JONES and PARKER to plead to a much less amount than the generic 5 kilograms stated in the indictment, and certainly a lot less than the 350 kilograms proffered by the Government to Magistrate Snow during the detention hearing. Such significant diminution of the amount of cocaine involved significantly changes the offense from one punishable by more than 10 years under the Controlled Substance Act, 21 U.S.C. §801, et seq. to an offense punishable by a lesser sentence. The

factors to be considered, in determining whether HICKS is a danger
to any person or the community are set forth in 18 U.S.C. §3142
(g)(1)(2)(A)(4). In determining whether HICKS is a danger to the
community the court must be made upon clear and convincing
evidence, in light of PARKER's and JONES's plea agreement the
amount of cocaine in question is no longer as clear as the
Government made it appear during HICKS detention hearing and
PARKER's and JONES's affidavits, as well as the Affidavits from
Bernard Smith, Nelson and Aiken, places in doubt just how clear
and/or convincing the weight of the evidence may be against HICKS.

12. The affidavits provided by HICKS co-defendant's indicate
that HICKS was not a conspirator in the alleged conspiracy and that
his reputation in the  community is that of someone who helps the
young and the elderly and someone who is a respected member of
society.

13. HICKS family has rallied behind him and undersigned counsel
is told by defendant's wife, PATRICE HICKS, that she will co-sign
any bond set by this Honorable Court and that she will use the
marital residence as collateral - the appraisal value of their home
is approximately $130,000. (purchased at $113,000.). Present equity
is about $27,000. Mrs. Hicks has been employed by the United States
Postal Service  for over 12 years, her salary is a little over
$40,000. annually. HICKS mother, Bernice Hicks will also co-sign
any bond and put-up the trailer she resides in as security. Other
persons who have said they would co-sign a bond are Preston
McDurrows; Rufus Lagree and Mayola Johnson.

14. Defendant HICKS has no prior criminal record and until the

time of his arrest resided with his wife and two daughters and a niece they are raising. HICKS and his family are lifetime resident of South Florida, he is 35 years of age and a United States citizen.

WHEREFORE the Defendant, RAYMOND HICKS, moves this Honorable Court to revoke the Order of Detention dated June 27, 2000, and to allow him  to be released subject to the following terms and conditions and such additional conditions as this Court deems just and appropriate:

1. The Defendant will post as surety and collateral the following property and/or person willing to co-sign the bond:

a.   The marital home appraised at approximately $130,000, equity presently about $27,000.

b. Mothers trailer.

c. Co-signatories: Preston McDurrows, Rufus Lagree, and Mayola Johnson.

2. The Defendant will cal pretrial Services on a daily basis, or as ordered by the Court.

3. The Defendant will not possess any firearms, ammunition, destructive devices, or other dangerous weapons as defined by law.

4. The Defendant shall not meet with any co-defendant or any known convicted felon, nor with any other individual specifically named by the Court.

5. Should the Court impose a home arrest or curfew, the Defendant request it be subject to the following exceptions:

(a)  Reasonable consultation with his attorney at said attorney's office.

(b) Scheduled court appearances at the United States District Court for the Southern District of Florida, Ft, Lauderdale, Florida.

(c) Medical examination with advance notice to Pretrial Services.

(d) Regular church services on Sunday with advance coordination with Pretrial Services as to the location and time of services.

(e) Any other condition set by the Court.

Respectfully submitted

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded by U.S. Mail to Kathleen Rice, Assistant United States Attorney at 500 East Broward Boulevard, 7th Floor, Fort Lauderdale, Florida 33394 and to all counsel of record named on the attached list this 19th day of April, 2001.

## 88.9 CERTIFICATE

Pursuant to Local Rule 88.9 undersigned counsel attempted to contact Kathleen Rice, Assistant United States Attorney in charge of this case without success, however, the Government has previously been opposed to HICKS motion for pretrial release.

RUBEN M. GARCIA, ESQUIRE
Counsel for Defendant HICKS
1209 S.E. 3rd Avenue
Ft. Lauderdale, Fl 33316
(954)462-4600
FAX: (954)462-0828
Florida Bar No.510475

Counsel List

UNITED STATES v. RAYMOND HICKS, et al
CASE NO.  00-6162-Cr-ROETTGER/SNOW

Richard Diaz, Esq.                    Michael Entin, Esq.
2701 S.W 3rd Avenue                   One East Broward Blvd.
Miami, Fl 33129-2335                  Suite 1500
                                      Ft. Lauderdale, Fl 33301
Randee Golder, Esq.
P.O. Box 3756
Boyton Beach, Fl 33424

Patrick Hunt, AFPD
101 N.E. 3rd Avenue
Suite 202
Ft. Lauderdale, Fl 33301

Steven Kassner, Esq.
815 Ponce De Leon Blvd.
Suite 303
Coral Gables, FL 33134-3007

Manuel Gonzalez, Esq.
780 N.W. 42nd Avenue
Suite 318
Miami, Fl 33126-5536

Vincent Flynn, Esq.
1221 Brickell Avenue
Suite 602
Miami, Fl 33131-3260

Ruben M. Garcia, Esquire
Attorney for HICKS
1209 S.E. 3rd Avenue
Ft. Lauderdale, FL 33316
(954)462-4600
FAX: (954)462-0828

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 00-6162-Cr-Roeltger

UNITED STATES OF AMERICA,

       Plaintiff,

v.

BERNARD SMITH, et al.

       Defendants.

_____/

## AFFIDAVIT IN SUPPORT OF MOTION TO SEVER

I, BERNARD SMITH, after first being duly sworn, do depose and say:

1.     That I am a co-defendant in the matter of UNITED STATES OF

AMERICA V. RAYMOND HICKS, et. al. Case Number 00-6162-CR-

ROETTGERS.

2.     That at present, I do not know if I will testify at my own trial.

3.     That at a separate trial, if placed under subpoena, I would testify on

behalf of my co-defendant RAYMOND HICKS as follows:

     a.     That I have never paid Raymond Hicks money for police-

type favors, or confidential police-type information.



DEFENDANT'S
EXHIBIT

_____
1

b.    That Raymond Hicks lawfully purchased a Mercedes Benz

automobile from my brother Barry Smith.

c.    That since I am not guilty of having distributed cocaine,

Raymond Hicks could never have transported cocaine for me.

d.    That I do not believe or know that Raymond Hicks was ever

involved in any illegal activity including drug activity.

e.    That I have never heard Raymond Hicks say that he would

"badge his way out of trouble if ever stopped by the police."

see below

BERNARD SMITH


sign.
print

STATE OF FLORIDA        )
COUNTY OF MIAMI-DADE )

 The foregoing instrument was acknowledged before me this 12 day of April 2001 by Bernard Smith, who personally appeared before me at the time of notarization and who is personally known to me or has produced personally Know as identification and did/did not take an oath

NOTARY PUBLIC

sign:

print:   Richard Diaz

State of Florida at Large
(Seal)

My Commission Expires:



TO WHOM IT MAY CONCERN:

    I, Elliot Aiken, being of sound mind and body due hereby state that never at any time did I combine, conspire, or agree to possess cocaine with intent to distribute with Raymond Hicks. In my opinion I feel that the Broward Sheriff's Office has a lot to do with his incarceration. I remember hearing at the gym about a lawsuit he had pending against B.S.O. Ramond Hicks is one of our most respected individuals in the community. Mr. Hicks would never as stated in the government's discovery, use his position to "badge himself out of trouble" or be involved in any illegal activity. I pray this statement will assist in freeing Raymond Hicks who is a one hundred percent innocent man.

Sincerely,

Elliot Aiken

    The foregoing instrument was acknowledged before me this 27ᵗʰ day of March 2001, by Elliot Aiken who had produced Federal Detention Center – Miami, Florida Inmate card #: /3058-018 as identification and who is not personally known by me.

Notary Public – State of Florida

OFFICIAL NOTARY SEAL
ELIZABETH M GARCIA
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC761230
MY COMMISSION EXP. JULY 20,2002

Elizabeth M. Garcia
Notary Public – State of Florida

**DEFENDANT'S EXHIBIT**
2

TO WHOM IT MAY CONCERN:

I, Asia Nelson, being of sound mind and body due hereby state that never at any time did I combine, conspire, confederate, or agree to possess cocaine with intent to distribute with Raymond Hicks. In my opinion Ramond Hicks is one of the most respected individuals within the community. I was incarcerated at the Broward jail during the period when Mr. Hicks was Correctional Officer. Mr. Hicks encouraged me to return to my family, and become productive member of society. His words touched my heart and brought tears to my eyes. I firmly beleive Mr. Hicks would never, nor has been ever been involve in illegal activity. I personally witness Mr. Hicks helped the neighborhood's youth and elderly. Mr. Hicks is not the alleged person that the government has made him to be. I pray this statement will assist in freeing Raymond Hicks an innocent man, who does not deserve this type of harsh treatment.

Sincerely,

_Asia Nelson_
Asia Nelson

The foregoing instrument was acknowledged before me this 27th day of March 2001, by Asa Nelson who had produced Federal Detention Center – Miami, Florida Inmate card #: 55401-004 as identification and who is not personally known by me.

Notary Public – State of Florida

OFFICIAL NOTARY SEAL
ELIZABETH M GARCIA
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC761230
MY COMMISSION EXP. JULY 20,2002

Elizabeth M. Garcia
Notary Public – State of Florida

**DEFENDANT'S EXHIBIT**
3

February 25, 2001

To Whom It May Concern:

I, Earl Parker, being of sound mind and body due hereby state that never at any time did I combine, conspire, or agree to possess cocaine with the intent to distribute with Raymond Hicks. In my opinion Raymond Hicks is one of the most respected individuals within community. For many years he has demonstrated great concern for our neighborhood's youth and elderly. I cannot imagine that Mr. Hicks would ever, or has ever been involved in any illegal activity. I pray this statement will assist in freeing Raymond Hicks, who is an innocent man.

Sincerely,

Earl Parker

The foregoing instrument was acknowledged before me this 26th day of February 2001, by  Earl  Parker  who had produced Federal Detention Center Miami, Florida Inmate Card # 553410 -004  as indentification, and who is not personally known by me.

Tracie E Jones
Notary Public-State of Florida

OFFICIAL NOTARY SEAL
TRACIE E JONES
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC761233
MY COMMISSION EXP. JULY 20,2002

Tracie E. Jones
Notary Public-Printed Name

**DEFENDANT'S EXHIBIT**

4

March 13, 2001

## TO WHOM IT MAY CONCERN:

I, Sam Jones, being of sound mind and body due hereby state that never at any time did I combine, conspire, or agree to possess cocaine with the intent to distribute with Raymond Hicks. In my opinion Raymond Hicks is one of the most respected individuals within the community. For many years he has demonstrated great concern for our neigborhood's youth and elderly. For the past two years my mother has help organized and chaperon the feast on Memorial Day that Mr. Hicks has held for kids that less fortunate than the others at Franklin Park. I cannot imagine that Mr. Hicks would ever, or has ever been involve in any illegal activity. I pray this statement will assist in freeing Raymond Hicks, who is innocent man.

Sincerely,

Sam Jones

The foregoing instrument was acknowledged before me this 14th day of $MARCH$ 2001, by Sam Jones who had produced Federal Detention Center - Miami, Florida Inmate card #: 55345-004 as identification and who is not personally known by me.

**DEFENDANT'S EXHIBIT**

5

OFFICIAL NOTARY SEAL
ELIZABETH M GARCIA
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC76:230
MY COMMISSION EXP. JULY 20,2002

Notary Public - State of Florida

Elizabeth M. Garcia
Notary Public - State of Florida

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

00-6162-CR-ROETTGER/SNOW(s)(s)

UNITED STATES OF AMERICA,

-vs-

EARL PARKER,

        Defendant.

_____/

## PLEA AGREEMENT

The United States of America and EARL PARKER (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Second Superseding Indictment, which count charges the defendant with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine in violation of Title 21, United States Code, Section 846.

2. The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guidelines range. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum

DEFENDANT'S
EXHIBIT
6

00380

authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the court must impose a minimum term of imprisonment of 10 years and may impose a statutory maximum term of imprisonment of up to life imprisonment, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $4,000,000.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

5. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office) reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The United States agrees that it will recommend at sentencing that the court reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the

2

court. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

a. Quantity of narcotics: That the quantity of cocaine involved in the offense with respect to this defendant as charged in Count One, for purpose of Section 2D1.1(a) and(c) of the Sentencing Guidelines, is at least 500 grams but less than 2 kilograms.

8. The defendant agrees that he shall cooperate fully with this Office by:

(a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

(b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and

(c) if requested by this Office, working in an undercover role to contact and negotiate with sources of cocaine and other controlled substances, or others suspected and believed to be involved in criminal misconduct under the supervision of, and in compliance with, law enforcement officers and agents.

3

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

10. The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in paragraph 9 of this agreement, should the government exercise its discretion to file such a motion.

11. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The

4

defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

    12. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

GUY A. LEWIS
UNITED STATES ATTORNEY

Date: 3/7/01

By: _____
KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY

Date: 3/7/01

By: _____
STEVEN H. KASSNER
ATTORNEY FOR DEFENDANT

Date: 3/7/01

By: _____
EARL PARKER
DEFENDANT

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

00-6162-CR-ROETTGER/SNOW

UNITED STATES OF AMERICA,

-vs-

SAM JONES, a/k/a "Sam Tyson,"

        Defendant.
_____/

## PLEA AGREEMENT

        The United States of America and SAM JONES, a/k/a "Sam Tyson," (hereinafter referred
to as the "defendant") enter into the following agreement:

        1. The defendant agrees to plead guilty to Count Two of the second superseding indictment,
which count charges the defendant with possession with intent to distribute in excess of 500 grams
of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and Title 18,
United States Code, Section 2.

        2. The United States agrees to seek dismissal of Count One of the indictment, as to this
defendant, after sentencing.

        3. The defendant is aware that the sentence will be imposed in conformity with the Federal
Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the
applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence
Investigation by the court's probation office, which investigation will commence after the guilty plea
has been entered. The defendant is also aware that, under certain circumstances, the court may

**DEFENDANT'S
EXHIBIT**

7

00379

depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guidelines range. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the court must impose a minimum term of imprisonment of 5 years and may impose a statutory maximum term of imprisonment of up to 40 years, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $2,000,000.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office) reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States agrees that it will recommend at sentencing that the court reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section

2

3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the court. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

a. Quantity of narcotics: That the quantity of cocaine involved in the offense charged in Count Two, for purpose of Section 2D1.1(a) and(c) of the Sentencing Guidelines, is at least 2 kilograms but less than 3.5 kilograms.

9. The defendant agrees that he shall cooperate fully with this Office by:

(a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

(b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and

3

(c) if requested by this Office, working in an undercover role to contact and negotiate with sources of cocaine and other controlled substances, or others suspected and believed to be involved in criminal misconduct under the supervision of, and in compliance with, law enforcement officers and agents.

10. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

11. The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in paragraph 10 of this agreement, should the government exercise its discretion to file a motion.

12. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government,

4

or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

GUY A. LEWIS
UNITED STATES ATTORNEY

Date: 3/7/01                    By: _____
                                    KATHLEEN RICE
                                    ASSISTANT UNITED STATES ATTORNEY

Date: 2/7/01                    By: _____
                                    PATRICK HUNT, ESQUIRE
                                    ASSISTANT FEDERAL PUBLIC DEFENDER
                                    ATTORNEY FOR DEFENDANT

Date: 2/7/01                    By: _____
                                    SAM JONES
                                    DEFENDANT

5